1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                * * *

| | |
|---|---|
| 9   In re R & S ST. ROSE LENDERS, LLC, | Case No. 2:17-cv-01322-MMD |
| 10 | |
|   Debtor. | |
| 11 | ORDER |
| 12 | (Appellant's Emergency Motion to Stay – ECF No. 2) |
| 13   BRANCH BANKING AND TRUST COMPANY, | |
| 14   Appellant, | |
| 15   v. | |
| 16   R & S ST. ROSE LENDERS, LLC, R&S ST. ROSE, LLC, R & S INVESTMENT | |
| 17   GROUP, COMMONWEALTH LAND TITLE INSURANCE COMPANY, THE | |
| 18   CREDITOR GROUP, AND US TRUSTEE, | |
| 19   Appellees. | |

20

21 **I.     SUMMARY**

22          This case concerns an appeal of a decision of the Bankruptcy Court for the District

23   of Nevada in which the court confirmed debtor R & S St. Rose Lenders, LLC's ("Lenders")

24   Third Amended Plan of Liquidation. Before the Court is Branch Banking and Trust

25   Company's ("BB&T") Emergency Motion to Stay Pending Appeal Pursuant to Federal Rule

26   of Bankruptcy Procedure 8007 ("Motion") (ECF No. 2). Appellee/debtor Lenders filed a

27   response (ECF No. 5) and BB&T filed a reply (ECF No. 9).

28          For the reasons discussed below, the Motion is denied.

## II.    BACKGROUND

While this appeal concerns the bankruptcy of Lenders, the bankruptcy of a related entity, R&S St. Rose, LLC ("Rose"), is relevant in understanding the procedural posture of this case. The following facts are taken from BB&T's Motion.[1]

Rose was created to purchase 38 acres of raw land located in Henderson, Nevada ("the Property"), while Lenders was formed for the sole purpose of real estate investment.[2] (ECF No. 2 at 3.) Rose obtained a $29,305.250 ("Acquisition Loan") from Colonial Bank, N.A. ("Colonial") in August of 2005, which was secured by a first position deed of trust recorded against the Property. (*Id.* at 4.) In addition, Rose obtained additional funds from a group of investors whose loans were secured by a deed of trust ("Lenders DOT") that was recorded in second position against the Property. Rose obtained title to the property around August 25, 2005.

Colonial issued a second loan to Rose in 2007 for $43,980,000 ("Construction Loan") to develop the Property, which was secured through a Deed of Trust and Security Agreement and Fixture Filing with Assignment of Rents ("Colonial DOT"). Some of the Construction Loan was used to pay off the Acquisition Loan. (*Id.* at 5.) Colonial required (and believed it received) a first position deed of trust against the Property for the Construction Loan. Colonial conditioned disbursements of the Construction Loan on receiving this first positon deed of trust, which would have required that the Lenders DOT be released or subordinated. However, sometime between July and September of 2008, it became apparent that the Lenders DOT and not the Colonial DOT had been placed in first position against the Property.

In August of 2009, BB&T became the successor-in-interest to Colonial after the Federal Deposit Insurance Corporation was appointed as received for Colonial.

///

---

[1]An exhaustive summary of the facts in this case can be found at ECF No. 793 of the underlying bankruptcy case, Case no. 11-14973-mkn ("Lenders Case").

[2]Lenders raised funds from private lenders and then loaned those funds to Rose so that Rose could purchase real property. (*See* Lenders Case, ECF No. 793 at 26.)

1    On April 4, 2011, Rose and Lenders filed separate voluntary Chapter 11 bankruptcy

2    petitions ("Rose Case"). On August 2, 2013, Rose filed a proposed Chapter 11 liquidating

3    plan ("the Rose Plan") in its bankruptcy case, which was then confirmed by order of the

4    bankruptcy court on November 8. The Court ordered that the Property be sold. Pursuant

5    to the Rose Plan, the net proceeds from this sale were then paid to Lenders. According to

6    BB&T, Lenders reported a cash balance of $11,685,324 in March of 2017.

7    On April 18, 2016, Lenders filed a proposed Chapter 11 liquidating plan ("the

8    Lenders Plan") in Lenders Case, and a revised version of this Plan was filed on November

9    1. (*Id.* at 9.) On November 7, the bankruptcy court held an evidentiary hearing, which

10   resulted in the bankruptcy court's confirmation of the Lender's Plan. The bankruptcy

11   court's order confirming the Lenders' Plan was entered on April 28, 2017. (*See* Lenders

12   Case, ECF No. 1039.) That same day, BB&T filed a notice of appeal of the bankruptcy

13   court's confirmation order as well as a motion to stay pending appeal (*see* Lenders Case,

14   ECF No. 1043). (ECF No. 2 at 10.) On May 10, 2017, the motion to stay was heard by the

15   bankruptcy court and continued to May 12, 2017, for further proceedings. However, on

16   May 12, 2017, the bankruptcy court denied BB&T's motion to stay.

17   BB&T filed its election to appeal the bankruptcy court's confirmation order to the

18   District Court on May 3, 2017.

19   **III.    DISCUSSION**

20   BB&T argues that its emergency motion should be granted because, "[s]hould the

21   Lenders Plan be implemented, approximately $5,000,000.00 will be distributed to the

22   holders of claims in Class 1 beyond any meaningful recovery should BB&T succeed on

23   various appeals." (ECF No. 2 at 10.) In its Motion, BB&T makes reference to three other

24   distinct appeals,[3] claiming that success on any of these appeals "will eliminate Lenders'

25

26       [3]According to BB&T, they have pending appeals concerning the following: (1) the
     bankruptcy court's order overruling BB&T's objection to Lender's claim as alleged in the
     Rose Case; (2) the bankruptcy court's judgment against BB&T establishing the amount of
27   the Lenders claim as alleged in the Rose Case; and (3) the bankruptcy court's order
     denying the substantive consolidation of the estates of Lenders and Rose. (ECF No. 2 at
28   3.)

1  ability to distribute funds under the Lenders Plan." (*Id.* at 3.) Although these appeals, if

2  successful, may change the nature and amount of disbursement under the Lenders Plan,

3  the Court may not consider the existence or potential success of these appeals in its

4  analysis. This Court's jurisdiction and consideration of the Motion is limited to the appeal

5  of the bankruptcy court's confirmation of the Lenders Plan in Lenders Case (and not the

6  Rose Case).[4] Because BB&T fails to focus its analysis on what, if any, irreparable injury

7  would result should this Court fail to stay disbursement pending its final decision *regarding*

8  *this specific appeal*, BB&T fails to meet the legal standard required of an emergency stay.

9      **A.    Legal Standard**

10      In deciding whether to issue a stay pending appeal of a bankruptcy court's order,

11  the district court must consider four factors: "(1) whether the stay applicant has made a

12  strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

13  irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

14  the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*

15  *v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987))

16  (internal quotation marks omitted). The district court balances these factors on a sliding

17  scale, where a strong showing on one factor may offset a weaker showing on another.

18  *See Levia-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citing *Alliance for the Wild*

19  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

20  ///

21

22  [4]BB&T presents six issues to this Court on appeal, asking whether the bankruptcy court erred in: (1) confirming debtor Lenders Plan; (2) waiving the 14-day stay set forth in FRBP 3020(e); (3) allowing claimants with fundamentally dissimilar claims in the single

23  class 1 of lender claimants of the Plan, in violation of 11 U.S.C. § 1129(a)(1); (4) confirming the Plan where it does not meet the good faith standard in 11 U.S.C. § 1129(a)(3) because

24  the Plan rewards participants in a business that is akin to a Ponzi Scheme; (5) concluding that the lender class of claimants set forth in class 1 comprises the requisite impaired

25  consenting class, even though insider members of class 1 cast ballots, thereby compromising Lenders' ability to rely on class 1 to satisfy the dual threshold calculations

26  of 11 U.S.C. § 1126(c); and (6) concluding that Lenders' claim as alleged in the Rose case was valid and that Lenders had an entitlement to proceeds arising from its claim as alleged

27  in the Rose Case. (*See* Lenders Case, ECF No. 1074 at 1-2.) However, it does not appear that the Court has jurisdiction over the last issue presented as it indirectly asks this Court

28  to review the outcome of the Rose Case.

1    Because the Court finds that BB&T fails to establish the likelihood of irreparable

2    injury absent a stay, the Court declines to address the other factors.

3        **B.    Irreparable Injury**

4        The mere possibility of irreparably injury is not sufficient to warrant a stay. *See*

5    *Nken*, 556 U.S. at 435 (citing *Winter v. Natural Res. Def. Council Inc.*, 555 U.S. 7, 22

6    (2008)). BB&T states that "irreparable harm exists because if a stay pending BB&T's

7    appeal is denied, approximately $5,000,000.00 . . . will be distributed through liquidation

8    to the 55 members of Class 1." (ECF No. 2 at 19.) Yet, BB&T does not argue that this $5

9    million will be difficult or impossible to recover should the Court refuse to stay distribution;

10   instead, BB&T cites to a series of cases to speculate that "[s]ome courts have determined

11   that a distribution of funds to diverse parties may constitute irreparable harm because

12   once a distribution is made, funds may be difficult or impossible to recover." (*Id.*) Moreover,

13   in its reply, BB&T asserts that irreparable injury flows from the "distribution of funds derived

14   from Lenders' disputed claim as filed in the Rose Case that is the subject of the appeals

15   related to the bankruptcy court judgment and order determining the amount of Lender's

16   claim in the Rose Case." (ECF No. 9 at 9.) As noted previously, the appeals in the Rose

17   Case and the appeal related to substantive consolidation of Rose and Lenders estates

18   are not issues before this Court. The Court therefore cannot consider appeals of claim

19   allowances in another bankruptcy[5] (*see* ECF No. 9 at 10) in determining whether

20   irreparable injury would result if this Court allowed distribution of the $5 million to Class 1

21   claimants in Lenders Case.

22       BB&T thus fails to establish that it will likely suffer irreparable injury in the absence

23   of a stay. The Court therefore denies BB&T's Motion.

24   ///

25       [5]In its reply, BB&T also states that if Lenders commence distribution of the $5
     million, this "would result in dissipation of the disputed funds and nullify any effects of a
26   reversal of the order overruling the Lenders claim objection or the judgment on appeal."
     (ECF No. 9 at 10.) It is important to note that this Court is not deciding whether to reverse
27   an order of the bankruptcy court overruling BB&T's claim objection. Rather, this Court is
     deciding only whether the Lenders Plan satisfies specific plan requirements of the
28   Bankruptcy Code, specifically 11 U.S.C. §§ 1129(a)(1), 1129(a)(3), and 1126(c).

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is hereby ordered that Appellant's emergency motion to stay (ECF No. 2) is denied.

DATED THIS 2nd day of June 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE