UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br>R&S ST. ROSE, LLC,<br>                  Debtor, | Case No. 2:17-cv-01322-MMD<br><br>ORDER<br><br>Bankruptcy Case No.: 11-14973-MKN<br>Chapter 11 |
| BRANCH BANKING AND TRUST COMPANY,<br>                  Appellant,<br>    v.<br>R & S ST. ROSE LENDERS, LLC; R & S ST. ROSE, LLC; R & S INVESTMENT GROUP, LLC; COMMONWEALTH LAND TITLE INSURANCE COMPANY; THE CREDITOR GROUP; and THE U.S. TRUSTEE,<br>                  Appellees. | |

**I.    SUMMARY**

Branch Banking and Trust Company, as successor in interest to the Federal Deposit Insurance Corporation (FDIC) as receiver for Colonial Bank N.A. ("BB&T"), appeals the Bankruptcy Court's confirmation of R&S St. Rose Lenders' ("Lenders") Third Amended Chapter 11 Plan of Liquidation ("Plan") in Lenders' Chapter 11 bankruptcy proceedings. BB&T's argument here is essentially that Lenders' confirmed Plan does not meet the "good faith" standard of the Bankruptcy Code because it rewards (or constitutes) a "Ponzi scheme" and achieves a result that is fundamentally unfair and inconsistent with the objectives and purposes of the Bankruptcy Code. (ECF No. 14.) Having considered

1 the parties' arguments and the record, this Court will affirm the confirmation of Lenders' Plan.

## II. BACKGROUND

The underlying facts of this case largely overlap with the facts in the Chapter 11 bankruptcy case filed by R&S St. Rose, LLC ("Rose") (bankruptcy case no. 11-14974-MKN) ("Rose Bankruptcy Case"). The overlapping factual details may be found on the Court's docket at ECF No. 108 in case no. 2:17-cv-1251-MMD.

On April 28, 2017, the Bankruptcy Court entered its Order on Confirmation of Debtor's Third Amended Plan of Liquidation ("Plan Confirmation Order") wherein it confirmed Lenders' Plan. (ECF No. 15 at 7–8.) In that order, the Bankruptcy Court directed that $6,359,052 be held back from distribution to Class 1 to protect BB&T's estimated pro rata distribution in the event BB&T's claim, then on appeal,[1] is ultimately allowed. (*Id.*; *id.* at 22 n.24.)

BB&T's appeal is timely, and the Court has jurisdiction under 28 U.S.C. § 158(a)(1).

## III. LEGAL STANDARD

This Court reviews "the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error." *In re Bonham,* 229 F.3d 750, 762 (9th Cir. 2000). The bankruptcy court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the bankruptcy court made a mistake. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re Brotby*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003); *see also In re Plyam*, 530 B.R. 456, 461 (B.A.P. 9th Cir. 2015) ("A bankruptcy court abuses its discretion if it applies the

///

---

[1]BB&T's claim stems from the same misrepresentation and civil conspiracy claims noted in 2:17-cv-1251-MMD that the state trial court did not decide and which this Court concluded was not precluded and the Ninth Circuit Court has since affirmed that decision (*see* ECF No. 15 at 22 n.24). *Branch Banking and Trust Co. v. Creditor Grp.*, No. 2:14-cv-00926-GMN, 2015 WL 1470692 (D. Nev. Mar. 2015); *In re R&S St. Rose Lenders, LLC*, 748 F. App'x 753 (9th Cir. 2018).

2

1 wrong legal standard, misapplies the correct legal standard, or if its factual findings are
2 illogical, implausible, or without support in inferences that may be drawn from the facts in
3 the record.").

The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009). In addition, the Court need not address arguments not raised in the trial court but "may do so to (1) prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change of law during the pendency of the appeal raises a new issue, or (3) when the issue is purely one of law." *In re Lakhany*, 538 B.R. 555, 560 (B.A.P. 9th Cir. 2015).

**IV.    DISCUSSION[2]**

BB&T contends that Lenders' confirmed Plan is lacking in good faith under 11 U.S.C. § 1129(a)(3) because (1) it endorses a Ponzi scheme and the Bankruptcy Court erred in finding otherwise and (2) its distribution scheme is unfair to BB&T. (ECF No. 14.) The Court first explains the framework for its good faith analysis and then address each of BB&T's arguments in turn.

Section 1129(a)(3) requires that the plan be proposed "in good faith and not by any means forbidden by law." By its definition, good faith means honesty in belief or purpose, faithfulness to one's duty or obligation, observance of reasonable commercial standards of fair dealing, and the absence of intent to defraud or to seek unconscionable advantage. Black's Law Dictionary (10th ed. 2009). As a general rule, a Chapter 11 plan is proposed in good faith where it achieves "a result consistent with the objectives and purposes" of the Bankruptcy Code and exhibits "fundamental fairness" in dealing with creditors. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1046 (9th Cir. 2013); *Jorgensen v. Fed. Land Bank of Spokane (In re Jorgensen)*, 66 B.R. 104, 108–09 (9th Cir. BAP 1986). In making a good faith determination a court considers the totality of the circumstances surrounding the plan. *In re Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir.

---

[2] To the extent that BB&T attempts to relitigate issues not directly concerning plan confirmation (such as the consolidation of the Rose and Lenders' bankruptcy cases or lien priority), the Court does not address them.

1988). A finding of good faith "will not be overturned unless the opponent of the plan can show that the finding was clearly erroneous." *Id.* (citations omitted).

### A. Whether Lenders' Plan of Liquidation Endorses a Ponzi Scheme

In response to BB&T's Ponzi scheme contention, Lenders raise a threshold issue—arguing that BB&T's allegation of a Ponzi scheme is time-barred because such allegation should have been raised in an avoidance action under Chapter 5 of the Bankruptcy Code, 11 U.S.C. § 544, 546–48. (ECF No. 43 at 16.) BB&T fails to address the timeliness issue in either its opening or answering briefs. Moreover, in the other case noted above—2:17-cv-1251-MMD—this Court declined to address the issue of timeliness regarding the same allegation because Lenders did not argue the issue there and because the Court found that the Bankruptcy Court's conclusion on the merits was otherwise sound. The Court will do likewise here.

Ultimately, the Court also adopts its finding regarding the merits of the Ponzi scheme as provided in 2:17-cv-1251-MMD. That is, the Court agrees with the Bankruptcy Court that BB&T fails to produce sufficient evidence to support a finding that Lenders engaged in a Ponzi scheme.[3] Because the Court has reached this conclusion, the Court accordingly finds that BB&T fails to establish fraudulent intent to support a conclusion that Lenders' Plan did not meet the good faith standard under the Bankruptcy Code.

### B. Fairness of the Plan's Distribution Scheme

The Court also finds that the plan distribution scheme which holds back a pro rata share for BB&T in the event its misrepresentation and civil conspiracy claims are ultimately successful is not unduly unfair to BB&T (or any other creditor who may not be repaid as a result of Lenders filing bankruptcy).

"[T]hat a creditor's contractual rights are adversely affected does not by itself warrant a bad faith finding." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1075 (9th Cir. 2002).

///

---

[3]BB&T relies on the allegation of a Ponzi scheme to support the application of the Ponzi presumption—presuming fraudulent intent and thus lack of good faith. *See, e.g., In re Int'l Mfg. Grp., Inc.*, 538 B.R. 22, 31 (E.D. Cal. 2015) (explaining that the Ponzi presumption comes into play with respects to intent).

"In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." *Id.* (quotation omitted). "A plan of liquidation is allowed in §§ 1123(a)(5)(D) and (b)(4) and can be proposed in good faith" and "[t]he bankruptcy judge is in the best position to assess the good faith of the parties." *In re Jorgensen*, 66 B.R. at 108–09 (citations omitted). The "preponderance of the evidence is the appropriate standard of proof in confirming a plan under §§ 1129(a) & (b)." *In re Arnold & Baker Farms*, 177 B.R. 648, 655 (B.A.P. 9th Cir. 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996).

Relevant to the issue of good faith, R. Phillip Nourafchan, manager of Lenders' principal, testified at trial—by declaration:[4]

> ¶ 7. The Debtor proposed the Plan in good faith and not by any means forbidden by law. Consistent with the overriding purpose of Chapter 11 of the Bankruptcy Code, I believe the Plan distributes the proceeds from the Property in good faith, in a fair and equitable manner, and enables holders of claims to realize the highest possible recoveries under the circumstances of the Debtor's Chapter 11 case. In fact, the Debtor was organized for the sole purpose of holding a deed of trust and later distribution of the proceeds of that deed of trust to its creditors. Accordingly, I believe that the payment of the proceeds proposed in the Debtor's Plan is proposed in good faith, feasible, fair and equitable.

(ECF No. 44 at 3–4, ¶ 7.) BB&T contends that a finding of good faith is nonetheless undermined by other testimony by Nourafchan that Lenders would not pursue fraudulent transfer actions or other avoidance actions against purported Ponzi scheme winners (*e.g.*, ECF No. 47 at 15). (ECF No. 22 at 179:14–20.) To the extent such an argument is not already nullified by the finding that BB&T presents insufficient evidence of a Ponzi scheme, Lenders provides that any action for fraudulent transfer or avoidance would be transferred to the liquidating trustee, Brian D. Shapiro. (ECF No. 43 at 32–33 (citing

///

---

[4]It is undisputed that the parties agreed that Nourafchan's testimony could be presented through his amended declaration in support of Lenders' Plan confirmation (ECF No. 44). (ECF No. 43 at 31 (stating the agreement which is not refuted by BB&T).)

Nourafchan's declaration and testimony at ECF No. 44 at 4, ¶ 8, and ECF No. 22 at 184).)[5]

The evidence does not support a conclusion that the Bankruptcy Court clearly erred in finding the Plan consistent with the objectives and purposes of the Bankruptcy Code—specifically to distribute proceeds in a manner that is fundamentally fair. Accordingly, the Court affirms the Bankruptcy Court's confirmation of Lenders' Plan.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect this appeal.

It is therefore ordered that the Bankruptcy Court's Plan Confirmation Order is affirmed.

The Clerk of Court is directed to enter judgment in accordance with this order and close this case.

DATED THIS 30th day of September 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The latter citation provides testimony by Nourafchan that upon liquidation all funds would be transferred to the liquidating trustee. Further BB&T concedes that the trustee is authorized to bring any claims for fraudulent transfer or avoidance (ECF No. 47 at 15). *See In re Lucas Dallas, Inc.*, 185 B.R. 801, 804 (9th Cir. BAP 1995) ("The trustee is authorized to prosecute state law fraudulent transfer actions under section 544(b)."); *see also In re Curry and Sorensen, Inc.*, 57 B.R. 824, 828 (9th Cir. BAP 1986) ("The exclusive power to commence avoidance actions vested in trustees and debtors-in-possession is permissive rather than mandatory and the exercise of this power can only be reviewed for abuse of discretion."). Notably, in his declaration, Nourafchan relayed that the liquidating trustee has "no connections with [Lenders], its principals, it affiliates or its creditors." (ECF No. 44 at 4, ¶ 8.)